1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CANDICE WADE,                              No. 2:25-cv-00622-DAD-JDP

12                  Plaintiff,

13           v.                                  ORDER DENYING PLAINTIFF'S MOTION
                                                 TO REMAND
14    COMMUNITY CHOICE FINANCIAL, et
      al.,                                       (Doc. No. 13)
15
                    Defendants.
16

17

18           This matter is before the court on plaintiff's motion to remand this action to the Shasta

19    County Superior Court, filed on April 1, 2025.  (Doc. No. 13.)  The pending motion was taken

20    under submission on the papers.  (Doc. No. 14.)  For the reasons explained below, plaintiff's

21    motion to remand will be denied.

22                                          **BACKGROUND**

23           On January 17, 2025, plaintiff Candice Wade, on behalf of herself and all others similarly

24    situated, filed a complaint initiating this putative class action in the Shasta County Superior Court

25    against defendants Community Choice Financial, CCFI Companies, LLC, and unnamed Doe

26    defendants 1–100.  (Doc. No. 1-4 at 5.)  In her complaint, plaintiff alleges as follows.

27           "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or

28    non-exempt employees within the State of California" and "[t]his pattern and practice involved,

1    *inter alia*, failing to pay them for all regular and/or overtime wages and for missed meal periods

2    and rest breaks in violation of California law."  (*Id.* at ¶ 33.)  "During the relevant time period,

3    Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in

4    excess of forty (40) hours in a week" and "Defendants intentionally and willfully failed to pay

5    overtime wages owed to Plaintiff and the other class members."  (*Id.* at ¶¶ 60–61.)  "During the

6    relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other

7    class members all wages due to them within any time period permissible under California Labor

8    Code section 204."  (*Id.* at ¶ 100.)  Plaintiff "and the other class members are entitled to recover

9    from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30)

10   day maximum pursuant to California Labor Code section 203."  (*Id.* at ¶ 95.)  Plaintiff "and the

11   other class members have been injured by Defendants' intentional and willful violation of

12   California Labor Code section 226(a) because they were denied both their legal right to receive

13   and their protected interest in receiving accurate and itemized wage statements pursuant to

14   California Labor Code section 226(a)."  (*Id.* at ¶ 106.)

15        Based on these and other allegations, plaintiff asserts the following causes of action:

16   (1) failure to pay all overtime wages in violation of California Labor Code §§ 510, 1198;

17   (2) failure to provide meal periods and pay missed meal period premiums in violation of

18   California Labor Code §§ 226.7, 512(a); (3) failure to provide rest periods and pay missed rest

19   period premiums in violation of California Labor Code § 226.7; (4) failure to pay all minimum

20   wages in violation of California Labor Code §§ 1194, 1197, 1197.1; (5) failure to pay all wages

21   earned and unpaid at separation in violation of California Labor Code §§ 201, 202; (6) failure to

22   pay wages timely during employment in violation of California Labor Code § 204; (7) failure to

23   furnish accurate itemized wage statements in violation of California Labor Code § 226(a); (8)

24   failure to keep requisite payroll records in violation of California Labor Code § 1174(d);

25   (9) failure to reimburse business expenses in violation of California Labor Code §§ 2800, 2802;

26   (10) violation of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et*

27   *seq.*; and (11) violation of the California Private Attorneys General Act of 2004, Labor Code

28   §§ 2698, *et seq.*  (*Id.* at ¶¶ 55–141.)

1    On February 21, 2025, defendants removed the action to this federal court pursuant to 28

2    U.S.C. §§ 1332(d), 1453, and 1711 on the grounds that this court has jurisdiction pursuant to the

3    Class Action Fairness Act ("CAFA").  (Doc. No. 1 at 2.)  On April 1, 2025, plaintiff filed the

4    pending motion to remand this action to the Shasta County Superior Court.  (Doc. No. 13.)  On

5    April 15, 2025, defendants filed their opposition to the motion, and on April 25, 2025, plaintiff

6    filed her reply thereto.  (Doc. Nos. 15, 16.)

7                                              **LEGAL STANDARD**

8    Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only

9    where authorized by the Constitution and Congress.  *See Kokkonen v. Guardian Life Ins. Co*., 511

10   U.S. 375, 377 (1994).  Unless otherwise limited, "any civil action brought in a State court of

11   which the district courts of the United States have original jurisdiction, may be removed by the

12   defendant or the defendants, to the district court of the United States for the district and division

13   embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "Through CAFA,

14   Congress broadened federal diversity jurisdiction over class actions . . . ."  *Mondragon v. Cap.*

15   *One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

16   Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28

17   U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse,

18   and the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v.*

19   *Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592

20   (2013)).  "Congress designed the terms of CAFA specifically to permit a defendant to remove

21   certain class or mass actions into federal court."  *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193,

22   1197 (9th Cir. 2015).  "[N]o antiremoval presumption attends cases invoking CAFA."  *Dart*

23   *Cherokee*, 574 U.S. at 89.  However, "[t]he rule that a removed case in which the plaintiff lacks

24   Article III standing must be remanded to state court under § 1447(c) applies as well to a case

25   removed pursuant to CAFA as to any other type of removed case."  *Polo v. Innoventions Int'l,*

26   *LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

27   /////

28   /////

3

**ANALYSIS**

Defendants removed this putative class action pursuant to CAFA, arguing that there is minimal diversity,[1] the putative class exceeds 100 members, and the amount in controversy in this action is $12,012,945,[2] which exceeds $5 million. (Doc. No. 1 at 17.) In her motion to remand, plaintiff argues that CAFA is not satisfied because defendants have failed to meet their burden of establishing that the amount in controversy here exceeds $5 million.[3] (Doc. No. 13 at 6.) In their opposition, defendants argue that the requirements of CAFA are satisfied because the amount in controversy is greater than $5 million. (Doc. No. 15 at 8.)

**A.    Defendants' Evidence**

Plaintiff argues defendants are required to provide extrinsic evidence to support their amount in controversy calculation, and that the declaration defendants provide is insufficient because it lacks supporting documents, does not establish the declarant's personal knowledge, and fails to explain the methodology used. (Doc. No. 13 at 8–11.) In their opposition, defendants argue that plaintiff brings a facial rather than a factual attack because plaintiff has offered no competing evidence, and that their submission of documents supporting the declaration upon which they rely is not required. (Doc. No. 15 at 11–16.) In her reply, plaintiff advances a somewhat difficult to decipher argument in which she suggests that because claims similar to those which she brings here were brought in a previously filed action against defendants, in order to assume continuing wage violations in their amount in controversy calculations defendants would have to admit that they never corrected their practices in response to the earlier action. (Doc. No. 16 at 6.)

/////

---

[1]  There may even be complete diversity as required for diversity jurisdiction. (Doc. No. 1 at 5–7.) However, because the parties do not address this issue in their briefing, and the court ultimately finds that the requirements of CAFA are also met, the court need not determine whether complete diversity is satisfied here.

[2]  In defendants' opposition, they calculate the amount in controversy to be at least $8,570,157.86 based on more recent data. (Doc. No. 15 at 27.)

[3]  Plaintiff does not dispute that the other requirements of CAFA are satisfied here.

4

1    In their notice of removal and their opposition to plaintiff's motion to remand, defendants

2 provide extrinsic evidence in the form of a declaration (Doc. No. 1-3) and supplemental

3 declaration (Doc. No. 15-2) from economist Ariel Kumpinsky. Based on data provided by

4 defendants, Mr. Kumpinsky determined such pertinent information as the number of putative

5 class members who separated from employment with defendants in the three years preceding the

6 filing of this action. (Doc. No. 15-2 at 3.) Mr. Kumpinsky then uses this and other data to

7 calculate the amounts in controversy as to several of plaintiff's claims. (*Id.* at 3–4.)

8    A declaration absent supporting documentation is sufficient to withstand a facial attack on

9 removal jurisdiction. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 961–65 (9th Cir. 2020); *see*

10 *also Rubel v. U.S. Nursing Corp.*, No. 1:23-cv-01664-JLT-CDB, 2025 WL 892816, at *8 (E.D.

11 Cal. Mar. 24, 2025) ("After *Garibay*, the Ninth Circuit held that a declaration may be sufficient

12 evidence to support removal, without additional evidentiary submissions."). Here, as in *Salter*,

13 plaintiff argues that defendants must support their assertions with competent proof, but plaintiff

14 does not offer any competing evidence or challenge the rationality of defendants' assertions. 974

15 F.3d at 964. Plaintiff's arguments therefore constitute a facial rather than a factual attack. *Id.* As

16 such, defendants' declaration, without supporting evidence, is sufficient to support defendants'

17 calculation of the amount in controversy.

18    Further, Mr. Kumpinsky's declaration includes a list of his credentials along with an

19 attachment expanding on the same, supporting the conclusion that he is a qualified expert. (Doc.

20 No. 15-2 at 2, 9–18.) The Federal Rules of Evidence allow an expert to base his opinion on "facts

21 or data . . . that the expert has been made aware of *or* personally observed." Fed. R. Evid. 703

22 (emphasis added). Therefore, Mr. Kumpinsky's declaration need not be based on personal

23 knowledge.

24    As to the methodology used, the court finds that certain of Mr. Kumpinsky's assumptions,

25 such as assumed violation rates, are proper to the extent they are founded on the allegations of

26 plaintiff's complaint. (Doc. No. 15-2 at 4.) In this regard, "a removing defendant is permitted to

27 rely on a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936

28 F.3d 920, 925 (9th Cir. 2019) (citation omitted). "Such assumptions cannot be pulled from thin

air but need some reasonable ground underlying them." *Id.* (citation omitted). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* (citation omitted).

However, Mr. Kumpinsky's declaration also includes certain unexplained deviations from typical formulas used by courts to calculate amounts in controversy. (Doc. No. 15-2 at 4) ("I counted the total number of shifts at issue in the class period and multiplied by 20% and *rounded up each employee's potential violation count to the nearest integer*.") (emphasis added). The court will not adopt these deviations and will instead adhere to standard formulas typically employed by courts when calculating the amounts in controversy as to each of plaintiff's claims.

Finally, plaintiff's argument that defendants are conceding their breach by calculating the amount in controversy is not well taken. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were 'unauthorized' within the meaning of the complaint.").

**B.    Overtime**

In an attachment to defendants' notice of removal, Mr. Kumpinsky calculates that the amount in controversy as to plaintiff's unpaid overtime wages claim is $1,838,172. (Doc. No. 1-3 at 4.) Plaintiff argues that in this calculation defendant has assumed without supporting documentation that putative class members worked one hour of uncompensated overtime per workweek. (Doc. No. 13 at 14–16.) Defendants counter that their assumption of one hour of uncompensated overtime per workweek is reasonable in light of the plain terms of the allegations of plaintiff's complaint. (Doc. No. 15 at 22.) Assuming the same violation rate but offering otherwise updated data in an amended declaration, defendants' expert calculates that the unpaid overtime claim amount in controversy in this case is $773,597.25. (Doc. No. 15-2 at 4.)

"Whether the alleged violations occur from time to time, as a matter of pattern and practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in controversy calculation." *Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645-BAS-AHG, 2024 WL 3877274, at *7 (S.D. Cal. Aug. 19, 2024). Here, in her complaint plaintiff alleges for

1   purposes of the overtime claim that "[d]uring the relevant time period, Plaintiff and the other

2   class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in

3   a week" and "Defendants intentionally and willfully failed to pay overtime wages owed to

4   Plaintiff and the other class members."  (Doc. No. 1-4 at ¶¶ 60–61.)  Plaintiff further alleges that

5   "Defendants engaged in a *pattern and practice* of wage abuse against their hourly-paid or non-

6   exempt employees within the State of California" and "[t]his pattern and practice involved, inter

7   alia, failing to pay them for all regular and/or overtime wages and for missed meal periods and

8   rest breaks in violation of California law."  (*Id.* at ¶ 33) (emphasis added).

9           Defendants propose an assumed violation rate of 20%, or one hour of unpaid overtime per

10  week.  (Doc. No. 15 at 25.)  Based on plaintiff's use of the phrase "pattern or practice," this

11  proposed rate is reasonable.  *See Wheatley v. MasterBrand Cabinets, LLC*, No. 18-cv-02127-

12  JGB-SP, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (assuming one hour per week of

13  unpaid overtime based on the plaintiff's "pattern and practice" allegations); *Sanchez v. Abbott*

14  *Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding

15  a 20% violation rate to be reasonable where the plaintiff alleged that defendant had a "'pattern

16  and practice' of failing to pay overtime wages to 'Plaintiff and other class members (but not

17  all)'").

18          The court therefore finds that the amount in controversy in this action for overtime wages

19  in this case is $977,058.[4]

20  /////

21  /////

22  

---

23  [4]  The court calculates the amount in controversy for plaintiff's overtime wages claim as follows:
    Number of Workweeks x Unpaid Overtime Hours Per Week x Overtime Rate of Pay.  *Lopez v.*
24  *Bellingham Marine Indus., Inc.*, No. 25-cv-00518-DAD-JDP, 2025 WL 2710458, at *7 n.6 (E.D.
    Cal. Sept. 23, 2025).  Here, defendants conservatively calculate the overtime rate of pay as 1.5 x
25  Minimum Wage.  (Doc. No. 15-2 at 5.)  Further, during the four years preceding the filing of this
    action, *Cabrera v. S. Valley Almond Co., LLC*, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585,
26  at *5, n.5 (E.D. Cal. Dec. 16, 2021), defendants' expert identified that class members worked a
    total of 42,024 workweeks.  (Doc. No. 15-2 at 3.)  Accordingly, the court's final calculation is
27  42,024 workweeks x 1 unpaid overtime hour per week x 1.5 x $15.50 minimum wage =
    $977,058.
28

1    **C.      Meal Break Violations**

2            In an attachment to defendants' notice of removal, Mr. Kumpinsky calculates that the

3    amount in controversy with respect to plaintiff's missed meal breaks claim is $1,225,448.  (Doc.

4    No. 1-3 at 4.)  Plaintiff argues that defendants' calculation improperly assumes a 100% meal

5    break violation rate without evidence.  (Doc. No. 13 at 16.)  In fact, defendants assume a 20%

6    violation rate, or one missed meal period per week.  (Doc. No. 15 at 25.)  In an attachment to

7    defendants' opposition, Mr. Kumpinsky provides a supplemental declaration, in which he

8    assumes the same violation rate—20%—but calculates the amount in controversy based on

9    updated data.  (Doc. No. 15-2 at 4.)  In this supplemental declaration, defendants' expert

10   calculates that the missed meal breaks claim amount in controversy is $610,405.50.  (*Id.*)

11           In her complaint, plaintiff alleges that defendant "engaged in a pattern and practice of

12   wage abuse against their hourly-paid or non-exempt employees within the State of California"

13   and that "[t]his pattern and practice involved, inter alia, failing to pay them . . . for missed meal

14   periods . . . in violation of California law."  (Doc. No. 1-4 at ¶ 33.)  "Courts in this circuit

15   regularly accept a 20% violation rate for purposes of calculating the amount in controversy for

16   meal . . . period claims where the plaintiff did not specify the frequency in which class members

17   missed meal or rest periods, or where the plaintiff alleged that there was a 'pattern or practice' of

18   such violations."  *Gallagher-Stevens v. Indep. Living Sys., LLC*, No. 24-cv-04582-WHO, 2025

19   WL 354630, at *5 (N.D. Cal. Jan. 31, 2025) (collecting cases).

20           Based upon the authorities discussed above, the court finds that the amount in controversy

21   as to the alleged meal period violations in this case is $651,372.[5]

22   /////

23   /////

24   _____

25   [5]  The court arrives at this number by multiplying Workweeks x Non-Compliant Meal Breaks Per
     Week x Average Hourly Rate.  *Lopez*, 2025 WL 2710458, at *7 n.7.  Here, defendants
26   conservatively assume the average rate of pay to be minimum wage.  (Doc. No. 15 at 15.)
     Further, during the four years preceding the filing of this action, *Cabrera*, 2021 WL 5937585, at
27   *5, n.5, defendants' expert identified that class members worked a total of 42,024 workweeks.
     (Doc. No. 15-2 at 3.)  Accordingly, the court's final calculation is 42,024 Workweeks x 1 Non-
28   Complaint Meal Break Per Week x $15.50 Average Hourly Rate = $651,372.

1      **D.      Waiting Time Penalties**

2              In an attachment to defendants' notice of removal, Mr. Kumpinsky calculates that the

3      amount in controversy for plaintiff's waiting time penalties claim is $4,095,840.  (Doc. No. 1-3 at

4      4.)  Plaintiff argues that defendants' calculation improperly assumes the maximum violation rate.

5      (Doc. No. 13 at 12–13.)  Defendants counter that this 100% violation rate assumption is

6      reasonable.  (Doc. No. 15 at 18–21.)  Assuming the same violation rate but offering otherwise

7      updated data in an amended declaration, defendants' expert now calculates that the waiting time

8      penalties claim amount in controversy is $994,955.61.  (Doc. No. 15-2 at 4.)

9              In her complaint, plaintiff alleges that she "and the other class members are entitled to

10     recover from Defendants the statutory penalty wages for each day they were not paid, up to a

11     thirty (30) day maximum pursuant to California Labor Code section 203."  (Doc. No. 1-4 at ¶ 95.)

12             "Waiting time claims are derivative of other claims."  *Haro v. Target Corp.*, No. 25-cv-

13     00831-JGB-DTB, 2025 WL 1898257, at *7 (C.D. Cal. July 9, 2025).  Thus, for defendant to be

14     liable for the maximum 30-day waiting time penalties, a departed employee would only need to

15     have suffered a single wage and hour violation that remains unremedied.  *Chan v. Panera, LLC*,

16     No. 23-cv-04194-JLS-AFM, 2023 WL 6367677, at *3–4 (C.D. Cal. Sept. 28, 2023).  Thus, in

17     concluding that the amount in controversy for underlying labor code violations is reasonable, the

18     court is also finding it reasonable to assume the maximum 30-day penalty for all employees

19     eligible for waiting time penalties.  *Marquez v. Southwire Co., LLC*, No. 21-cv-00252-JGB-SP,

20     2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021) ("If Defendant had a 'pattern and practice' of

21     refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely

22     that all or nearly all class members experienced wage statement and delay violations.").  In fact,

23     one district court has concluded that it would be *unreasonable* to use an amount less than the 30-

24     day maximum when, as here, the complaint (*see* Doc. No. 1-4 at ¶ 95) seeks penalties "up to a

25     maximum of thirty (30) days."  *Ortiz v. Sheraton Op. LLC*, No. 24-cv-05104-JAK-JPR, 2024 WL

26     4625951, at *8 (C.D. Cal. Oct. 30, 2024) ("[U]sing an amount less than the 30-day penalty

27     maximum is unreasonable.  The Complaint itself seeks penalties 'up to a maximum of thirty (30)

28     days.'").  In addition, it is reasonable to assume the full 30-day penalty for the employees who

1  departed more than 30 days before plaintiff filed her complaint because "there is nothing in the

2  [c]omplaint to suggest that violations, once they happened, were ever remedied." *Chan*, 2023

3  WL 6367677, at *4.  Moreover, "because Plaintiff does not allege or offer evidence that some

4  class members worked part time, it is reasonable for Defendant to assume eight-hour shifts."

5  *Wheatley*, 2019 WL 688209, at *6.

6       Accordingly, the court concludes that the amount in controversy as to plaintiff's claim for

7  waiting time penalties is $1,116,000.[6]

8  **E.     Failure to Pay Wages Timely During Employment**

9       Defendants' notice of removal does not include a calculation of the amount in controversy

10  with respect to plaintiff's failure to pay wages timely during employment claim.  (Doc. No. 1-3.)

11  However, in his supplemental declaration, defendants' expert calculates that the amount in

12  controversy for this claim is $3,051,506.00.  (Doc. No. 15-2 at 4.)

13       In her complaint, plaintiff alleges that "[d]uring the relevant time period, Defendants

14  intentionally and willfully failed to pay Plaintiff and the other class members all wages due to

15  them within any time period permissible under California Labor Code section 204."  (Doc. No. 1-

16  4 at ¶ 100.)  Because plaintiff's "allegations of wage statement violations are not limited in any

17  manner, it is reasonable to assume, for purposes of the jurisdictional analysis, that each of the

18  wage statements proffered by [defendants' declaration] violates Section 204."  *Mariscal v.*

19  *Arizona Tile, LLC*, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *4 (C.D. Cal. Apr. 14,

20  2021) ("Mariscal alleges Arizona Tile has intentionally and willfully failed to pay him and the

21  /////

---

22  [6] The court calculates the amount in controversy for plaintiff's waiting time penalties claim as

23  follows:  300 putative class members who terminated during the three-year statutory period x 8
    hours per day x 30 days x $15.50 average rate of pay = $1,116,000.  *See Ortega v. ITS Techs. &*

24  *Logistics, LLC*, 21-cv-00562-JWH-KK, 2021 WL 4934978, at *5 n.34 (C.D. Cal. Oct. 22, 2021)
    (providing formula for calculating waiting time penalties); *Lopez v. Advanced Drainage Sys.,*

25  *Inc.*, 777 F. Supp. 3d 1100, 1108 (N.D. Cal. 2025) (noting that waiting time penalty claims have a
    three-year statute of limitations).  This amount in controversy is higher than the amount

26  calculated by defendants' expert because defendants' expert uses an undisclosed actual "average
    hours per day" instead of 8 hours per day.  (Doc. No. 15-2 at 6.)  In the court's view, the latter is

27  reasonable to assume given the language employed in the allegations of plaintiff's complaint.  *See*

28  *Wheatley*, 2019 WL 688209, at *6.

1    other class members all wages due to them within any time period permissible under California

2    Labor Code section 204[.]").

3          Accordingly, the court finds that plaintiff's claim for the failure to pay wages timely

4    during employment places, at minimum, an additional $2,566,300 in controversy.[7]

5    **F.    Wage Statement Penalties**

6          Defendants' notice of removal does not provide a calculation for the amount purportedly

7    in controversy as to plaintiff's wage statement penalties claim.  (Doc. No. 1-3.)  However, in his

8    supplemental declaration, defendants' expert has calculated the amount in controversy for this

9    claim to be $1,283,150.00.  (Doc. No. 15-2 at 4.)

10         For purposes of her wage statement penalty claim, plaintiff alleges in her complaint that

11   she "and the other class members have been injured by Defendants' intentional and willful

12   violation of California Labor Code section 226(a) because they were denied both their legal right

13   to receive and their protected interest in receiving accurate and itemized wage statements

14   pursuant to California Labor Code section 226(a)."  (Doc. No. 1-4 at ¶ 106.)

15         Inaccurate wage statement penalties are derivative of meal and rest period violations.

16   *Sanchez*, 2021 WL 2679057, at *6.  Thus, "when meal period and rest period violation rates are

17   found reasonable, courts have held a 100% wage statement inaccuracy assumption may also be

18   reasonable." *Id.* (citation omitted); *Wicker v. ASC Profiles LLC*, No. 19-cv-02443-TLN-KJN,

19   2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021) ("[S]ince one missed meal and rest period

20   _____

21   [7]  Defendants' declaration identifies 857 putative class members who worked a total of 13,260 bi-
     weekly pay periods during the one-year statutory period.  (Doc. No. 15-2 at 6.)  Accordingly, the

22   court calculates the amount in controversy using the following equation:  (857 initial violations x
     $100 per initial violation) + ([13,260 total violations – 857 initial violations = 12,403 subsequent

23   violations] x $200 per subsequent violation) = $2,566,300.  *Mariscal*, 2021 WL 1400892, at *4
     ("California Labor Code section 210 provides for a recovery of $100 for the initial violation of

24   California Labor Code section 204 and $200 for each subsequent violation. . . . The Court
     therefore subtracts the 261 initial statements from the total when calculating the amount placed

25   into controversy by subsequent violations.").  In contrast, defendants' calculation in this regard
     assumes that all untimely wage statement penalties were subsequent rather than initial.  (Doc. No.

26   15-2 at 6.)  Defendants' expert also added 25% of the amount unlawfully withheld within the one-
     year statute of limitations.  (*Id.*)  Defendants' expert does not appear to provide the data necessary

27   to recreate this calculation, and the court need not do so here given that the total amount in
     controversy exceeds $5 million regardless.

28

11

1    was reasonable, that would mean that every wage statement was inaccurate and subject to

2    penalties") (internal quotation marks and citation omitted).  As outlined above, the court has

3    identified and calculated the reasonable violation rate related to plaintiff's meal period violation

4    claim.  Since, as discussed above, it is reasonable to assume a violation rate of one meal period

5    violation per week, the bi-weekly "wage statements that Defendants provided would necessarily

6    have been inaccurate 100% of the time, given that each wage statement would have failed to

7    include compensation for the missed meal/rest break."  *Lucas v. Michael Kors (USA), Inc.*, No.

8    18-cv-01608-MWF-MRW, 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018); *see also Nunes v.*

9    *Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept.

10    12, 2019) ("Given the allegations, it is reasonable to assume the class members suffered at least

11    one violation (e.g. one missed meal or rest break) per pay period.  This Court therefore finds,

12    based on the Complaint, Home Depot's assumption of a 100 percent violation rate is

13    reasonable.").

14           Accordingly, the court calculates the amount in controversy as to plaintiff's wage

15    statement penalties claim to be $1,283,150.[8]

16           The court need not calculate the amount in controversy associated with plaintiff's

17    remaining claims or attorney's fees because based on those amounts in controversy already

18    calculated above, the total amount in controversy in this case is at least $6,593,880,[9] well over the

19    $5 million minimum required under CAFA.

20    _____

21    [8]  The court calculates the amount in controversy for plaintiff's wage statement penalties claim as
      follows:  (857 initial violations x $50) + ([13,260 total violations – 857 initial violations = 12,403

22    subsequent violations] x $100) = $1,283,150.  *See Fong v. Regis Corp.*, No. 13-cv-04497-RS,
      2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) ("When an employer knowingly and intentionally

23    fails to provide an accurate wage statement, the employee: 'is entitled to recover the greater of all
      actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one

24    hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed
      an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and

25    reasonable attorney's fees.'") (quoting Cal. Lab. Code § 226(e)(1)).

26    [9]  The court calculates the total amount in controversy by adding each of the preceding claims'

27    amounts in controversy:  $977,058 (overtime) + $651,372 (meal breaks) + $1,116,000 (waiting
      time) + $2,566,300 (untimely wage penalties) + $1,283,150 (wage statement penalties) =

28    $6,593,880.

1

**CONCLUSION**

2       For the reasons explained above,

3       1.      Plaintiff's motion to remand (Doc. No. 13) is DENIED;

4       2.      The court hereby SETS the Initial Scheduling Conference in this matter for

5               December 8, 2025 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom.  The

6               parties are directed to file their joint status report regarding scheduling no later

7               than November 24, 2025; and

8       3.      The Clerk of the Court is DIRECTED to issue District Judge Dale A. Drozd's

9               Standing Order.

10      IT IS SO ORDERED.

11  Dated:    **October 16, 2025**                          _____

12                                                          DALE A. DROZD
                                                            UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13